UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIMOTHY THIBODEAUX | CIVIL ACTION |
| VERSUS | NO. 17-17701 |
| DARREL VANNOY, WARDEN | SECTION "E" (2) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.   Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1]   For the following reasons, I am constrained to recommend that the petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    Introduction for this Reopened Case

Petitioner Timothy Thibodeaux filed this *pro se* a federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 related to his 2011 Lafourche Parish convictions for aggravated rape and aggravated incest.   ECF No. 6.   The State filed an opposition addressing Thibodeaux's ineffective assistance of counsel claims.   ECF No. 11.   On August 10, 2018, stating that this "may be one of those rare petitions filed by a prisoner in proper person that warrants federal habeas

---

[1]  A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id.* § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  *Id.* § 2254(e)(2)(B).

corpus relief," Magistrate Judge Joseph C. Wilkinson, Jr. (retired) recommended that the matter be stayed to allow Thibodeaux to return to the state courts to assert and exhaust review of a standalone claim that his confrontation rights were violated when he was not able to cross-examine the victims whose recorded interviews were used at trial.   ECF No. 12.   As recommended, the court stayed the matter on September 13, 2018.   ECF No. 13.

On September 23, 2020, the matter was reopened, and Thibodeaux filed his supplemental brief in support of his Confrontation Clause claim.   ECF Nos. 14, 15, and 16.   The State and Thibodeaux have filed additional briefing addressing all of Thibodeaux's claims.   ECF Nos. 21, 24, 25, and 29.   Now that exhaustion of all claims is complete and the state courts have ruled, this federal habeas court is bound by the deferential standards of the procedural bar doctrine and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as explained in this report.

## II.   <u>FACTUAL BACKGROUND</u>

On September 21, 2009, Thibodeaux was indicted by a Lafourche Parish grand jury for aggravated rape of his minor daughter, C.T., and aggravated incest of his minor daughter, C.T. a/k/a A.T.[2]   Thibodeaux pled not guilty on September 24, 2009.[3]

### A.   <u>Trial Proceedings</u>

The Louisiana First Circuit Court of Appeal summarized the facts established at trial as follows:

> At trial, the State presented evidence of defendant's offenses primarily through videotaped interviews of the victims, which were conducted at the

---

[2]   State Record (hereinafter "St. R.") Vol. 1 of 3, at 18-19, Indictment, 9/21/09.   Pursuant to LA. REV. STAT. ANN. § 46:1844(W), the state courts identify juvenile victims and family by initials.   The victims in this case had the same initials.   The state courts referred to the younger victim as A.T. based on a nickname. I will do the same.   Paternity was established by stipulation.   St. R. Vol. 1 of 3, at 66, Stipulation, 6/20/11.
[3]   St. R. Vol. 2 of 3, Arraignment Tr., at 2, 9/24/09.

Lafourche Children's Advocacy Center ("CAC").    The evidence supporting defendant's convictions was included in separate interviews conducted with C.T. and A.T. on August 5, 2009, when the victims were in the custody of a foster parent. C.T. stated during her interview that defendant had inserted his penis into her vagina one night while she was living in her mother's trailer.    A.T. stated during her interview that defendant had twice touched her private area with his hands. According to A.T., defendant had once touched the outside of her private area, under her underwear.    A.T. said that on another occasion, defendant inserted his finger into her vagina.    Both C.T. and A.T. stated that these incidents occurred prior to their placement into foster care, which occurred in late 2007.[4]

On January 24, 2011, Thibodeaux waived his right to trial by jury.[5]    Thibodeaux went to trial before a state court judge on June 20, 2011.[6]    The judge fund Thibodeaux guilty as charged on both counts.[7]    At trial, the assistant district attorney and petitioner's trial attorney stipulated that petitioner and his attorney viewed four audio video interviews with the child victims.[8]    These videos were the only exhibits introduced into evidence.[9]    The children did not testify at trial. After each video was offered, filed and introduced into evidence at trial, the court asked defense counsel if he had any objections, and each time, he answered, "No objection."[10]    At the end of the trial, the judge stated, "Without [the child victims'] making the statements in 2009, this case is over."    Then, based on the child victims' videotaped statements, he found that the state proved petitioner's guilt beyond a reasonable doubt.[11]

---

[4]  *State v. T.T.*, 111 So. 3d 71, 73 (La. App. 1st Cir. 2012); St. R. Vol. 2 of 3, 1st Cir. Opinion, 2012-KA-0146, at 2-3, 9/21/12.
[5]  St. R. Vol. 2 of 3, Hearing Tr., at 6-7, 1/24/11.
[6]  St. R. Vol. 1 of 3, at 107-337, Trial Tr., 6/20/11.
[7]  *Id*. at 327-28, Trial Tr., 6/20/11.
[8]  *Id*., Stipulation, 6/20/2011.
[9]  *Id*., List of Exhibits, 12/1/2011.
[10]  *Id.,* Trial Tr. at 68, 71, 75-81, 6/20/2011.
[11]  *Id.*, Trial Tr. at 22.

On August 17, 2011, Thibodeaux's trial counsel filed a Motion for New Trial asserting that Thibodeaux was denied his confrontation rights at trial.[12]   Thibodeaux's counsel argued that the State's failure to make the victims available at trial in lieu of or in addition to the introduction of the videotaped statements violated Thibodeaux's confrontation rights and counsel's discovery of this violation constituted "newly discovered evidence" that entitled Thibodeaux to a new trial.[13] The State opposed the motion urging that the victims were always available to testify, but Thibodeaux never requested that they be called to testify at trial.[14]

At the September 12, 2011, sentencing hearing, the state trial court denied the motion for a new trial.[15]   The court commented that neither party had ever discussed calling the child victims at trial.[16]   Instead, the court noted, the defense never objected to and in fact acquiesced to the use of the videotapes at trial and never called the victims to the stand despite the subpoenas issued by the prosecutor.[17]   That same day, after waiver of the statutory delay period, the court sentenced Thibodeaux to life in prison for aggravated rape and 50 years in prison for aggravated incest.[18] The sentences were ordered to run concurrently and without benefit of parole, probation, or suspension of sentence.[19]

---

[12]  St. R. Vol. 1 of 3, at 73-78, Motion for New Trial, 8/17/11.

[13]  *Id*. at 73-75, 77-78.

[14]  St. R. Vol. 2 of 3, State's Opposition to Motion for New Trial, at 2, 9/7/11.

[15] St. R. Vol. 2 of 3, Sentencing Tr., at 16-21, 9/12/11.   The record also contains a Motion in Arrest of Judgment filed by Thibodeaux's counsel on July 5, 2011.   St. R. Vol. 1 of 3, at 67-68, Motion in Arrest of Judgment, 7/5/11.   The state trial court signed an order indicating the motion was withdrawn in that day in open court.   *Id*. at 69, Trial Court Order, 7/5/11.

[16]  St. R. Vol. 2 of 3, Sentencing Tr., at 17-18, 9/12/11.

[17]  *Id*. at 18-19.

[18]  St. R. Vol. 2 of 3, Sentencing Tr., at 28-31, 34, 9/12/11.

[19]  *Id*., Sentencing Tr., at 31, 9/12/11.

### B. **The Direct Appeal**

On direct appeal to the Louisiana First Circuit Court of Appeal, Thibodeaux's appointed

counsel asserted two errors:

(1)     The state trial court erred by permitting Thibodeaux to waive trial by jury; and

(2)     The state trial court erred by sentencing Thibodeaux for aggravate incest under LA. REV. STAT. ANN. § 14:78.1(D)(2) because the age distinction under that provision was not included in the indictment.[20]

Thibodeaux filed a *pro se* supplemental brief in which he asserted that the evidence was

insufficient to support the verdicts.[21]

On September 21, 2012, the Louisiana First Circuit affirmed Thibodeaux's convictions and

sentences.[22]    The court found the first claim procedurally defaulted for lack of a contemporaneous

objection at trial.[23]    Alternatively, the court found no merit to this claim.[24]    The court also found

no merit to Thibodeaux's other claims.[25]    On November 5, 2012, the court denied Thibodeaux's

application for rehearing.[26]

On May 17, 2013, without stated reasons, the Louisiana Supreme Court denied the writ

application filed by Thibodeaux's appointed counsel.[27]    Thibodeaux did not file an application for

---

[20] *Id.*, Appeal Brief, at 3, 2012-KA-0146, 3/7/12; *id.*, Reply Brief, 2012-KA-0146, 5/16/12.

[21] *Id.*, *Pro Se* Brief, at 3, 2012-KA-0146, 3/30/12 (dated 3/28/12).

[22] *T.T.*, 111 So. 3d at 73, 79; St. R. Vol. 2 of 3, 1st Cir. Opinion, 2012-KA-0146, at 2, 13, 9/21/12.

[23] *T.T.*, 111 So. 3d at 74-75; St. R. Vol. 2 of 3, 1st Cir. Opinion, at 4-5, 2012-KA-0146, 9/21/12.

[24] *T.T.*, 111 So. 3d at 75; St. R. Vol. 2 of 3, 1st Cir. Opinion, at 5, 2012-KA-0146, 9/21/12.

[25] *T.T.*, 111 So. 3d at 75-77; St. R. Vol. 2 of 3, 1st Cir. Opinion, at 6-12, 2012-KA-0146, 9/21/12.

[26] St. R. Vol. 2 of 3, 1st Cir. Order, 2012-KA-0146, 11/5/12; *id.*, Application for Rehearing, 2012-KA-0146, 10/5/12.

[27] *State v. Thibodeaux*, 117 So. 3d 509 (La. 2013); St. R. Vol. 2 of 3, La. Sup. Ct. Order, 2012-K-2617, 5/17/13; *id.*, La. Sup. Ct. Letter to Counsel, 2012-K-2617, 12/6/12.    The State failed to produce as ordered certified copies of any of the Louisiana Supreme Court pleadings, including this writ application.    A partial copy, with no file stamp, appears to be attached to Thibodeaux's petition.    ECF No. 6-1, at 78-84.

5

writ of certiorari with the United States Supreme Court within ninety (90) days, and thus, his

convictions and sentences became final on August 15, 2013.[28]

### C. **Petitioner's State Post-Conviction Relief Application**

On December 16, 2013, Thibodeaux filed with the state trial court a *pro se* application for

post-conviction relief alleging, as amended, that he received ineffective assistance of counsel in

the following ways:

(1)     counsel failed to investigate the claims against him;

(2)     counsel failed to object to the prosecutorial misconduct through the admission of unreliable evidence;

(3)     counsel denied him the right to confront witnesses against him; and

(4)     counsel failed to communicate the State's offer of a plea bargain.[29]

The state trial court ordered and received a response from the State.[30]   The court later appointed

Thibodeaux counsel and held evidentiary hearings on October 15 and 22, 2015, to address his

claims.[31]   At the conclusion of the second hearing, which included testimony from Thibodeaux's

trial counsel, the state trial court denied the application under the standards set forth in *Strickland*

*v. Washington*, 466 U.S. 668 (1984).[32]   The Court recognized that Thibodeaux's trial counsel

candidly admitted his malpractice and deficient performance.   However, the court found no

---

[28] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); SUP. CT. R. 13(1).

[29] St. R. Vol. 2 of 3, Application for Post-Conviction Relief, 12/19/13 (dated 12/16/13); *id.*, Brief in Support, at 6, 12/16/13; *id.*, Amended Claim for Post-Conviction Relief, 3/3/14 (dated 2/24/14).

[30] St. R. Vol. 2 of 3, Trial Court Order, 6/30/14; *id.*, State's Answer, 8/18/14 and State's Memorandum in Support of Answer to Application for Post-Conviction Relief, 8/18/14; St. R. Vol. 3 of 3, State's Answer to Amended Post-Conviction Claim, 8/6/15 and State's Memorandum in Support of Answer to Amended Application for Post-Conviction Relief, 8/6/15.

[31] St. R. Vol. 2 of 3, Trial Court Order, 8/27/14; St. R. Vol. 3 of 3, Hearing Tr., 10/15/15; *id.*, Hearing Tr., 10/22/15.

[32] St. R. Vol. 3 of 3, Hearing Tr., at 65-68, 10/22/15

evidence to support his admission or to establish that, but for his actions or inactions, the outcome of the trial would have been different.[33]

On its review of that ruling, the Louisiana First Circuit ordered additional briefing on Thibodeaux's claim that his Sixth Amendment right to confront the victims was violated when the State failed to call the victims and Thibodeaux was not afforded the opportunity to question the victims before trial.[34]   On April 25, 2016, the Louisiana First Circuit granted in part and denied in part Thibodeaux's writ application.[35]   The court found that Thibodeaux's Sixth Amendment confrontation rights were violated when the victims' recorded statements were used without the State having made the victims available at or before trial.[36]   The court also found that defense counsel's failure to object to the unavailability of the witnesses was deficient and prejudicial proving ineffective assistance under *Strickland*.[37]   The court reversed the trial court's denial of Thibodeaux's post-conviction application, reversed his convictions, vacated his sentences, and ordered a new trial.[38]

On October 27, 2017, the Louisiana Supreme Court granted the State's writ application and reversed the Louisiana First Circuit.[39]   The court found that Thibodeaux had not asserted a

---

[33] *Id*., Hearing Tr., at 67, 10/22/15.

[34] *Id*., 1st Cir. Order, 2015-KW-1823, at 1, 2/26/16.   The State failed to provide the pleadings associated with any of the post-conviction writ applications in this case, as ordered.   Thibodeaux attached what appears to be a copy of his application, without signature, date, or file stamp, to his petition.   ECF No. 6-2, at 8-28 (copy of writ application).

[35] *Id*., 1st Cir. Order, 2015-KW-1823, 4/26/16.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *State v. Thibodeaux*, 227 So. 3d 811 (La. 2017); St. R. Vol. 3 of 3, La. Sup. Ct. Order, 2016-KP-0994, 10/27/17.   The State failed to provide a copy of this writ application and related pleadings.   A copy of Thibodeaux's opposition to the State's writ application is attached to Thibodeaux's petition.   ECF No. 6-2, at 29-37.

stand-alone confrontation violation claim in his post-conviction application, and the appellate court erred when is *sua sponte* addressed a claim not raised by the petitioner.[40]   Nevertheless, the court held that Thibodeaux made no showing at the evidentiary hearings that the victims were unavailable to testify.   The court also held that the petitioner, and the appellate court, "impermissibly sought to shift the post-conviction burden of proof to the state by asserting that *the state* failed to demonstrate these witnesses' availability *vel non* to testify."[41]   The court also found that the state trial court correctly applied *Strickland* when it held that defense counsel's failure to cross-examine the victims was deficient but not prejudicial.   The court concluded that Thibodeaux failed to show that the victim's testimony would have been different if called at trial.   The court granted the State's writ application, reversed the appellate court's partial grant, and reinstated the state trial court's ruling on the post-conviction application.[42]

### D.  <u>The Federal Habeas Petition</u>

On January 10, 2018, the clerk of court filed Thibodeaux's corrected petition for federal habeas corpus relief, which asserted the following claims:

(1) he received ineffective assistance of counsel at trial when his trial counsel failed to (a) call certain witnesses in his defense and (b) conduct a proper investigation to learn facts necessary to present a full and proper defense and present evidence favorable to the defense;

(2) the trial court erred in sentencing him on count two, aggravated incest, under LA. REV. STAT. ANN. §14.78.1(D)(2); and

---

[40] *Thibodeaux*, 227 So. 3d at 812; St. R. Vol. 3 of 3, La. Sup. Ct. Order, at 2, 2-16-KP-0994, 10/27/17.

[41] *Id*. (emphasis in original); St. R. Vol. 3 of 3, La. Sup. Ct. Order, at 2, 2-16-KP-0994, 10/27/17.

[42] *Id*.; St. R. Vol. 3 of 3, La. Sup. Ct. Order, at 2, 2-16-KP-0994, 10/27/17.

(3)    his confrontation rights were violated when he was not afforded an adequate opportunity to cross-examine witnesses against him, including the victims' out-of-court videotaped statements that were used against him at trial.[43]

In his August 10, 2018 Report and Recommendation, Magistrate Judge Wilkinson (retired) found that petitioner stated a colorable standalone confrontation clause claim that was not plainly meritless.  ECF No. 12, at 11-15.  But, because that claim had not been exhausted in the state court, he recommended that the federal habeas petition be stayed, after which "[i]f no relief is obtained in the state courts, he may then return to this court for full merits review of all of his claims."  *Id.* at 15-16.

### E.    Proceedings on Return to State Court

Following this court's stay, on September 20, 2018, Thibodeaux filed with the state trial court a Motion to Correct Error.[44]   In the motion, Thibodeaux again asserted that his counsel was ineffective and his confrontation rights under the federal and state constitutions were violated when he was denied the opportunity to cross-examine the victims at trial.[45]   The State urged procedural objections arguing that Thibodeaux's motion was a repetitive and successive post-conviction application under LA. CODE CRIM. PROC. art. 930.4(D), (E).[46]   Thibodeaux, through appointed counsel, replied that the confrontation violation claim should not procedurally barred because it was not plainly meritless, citing Judge Wilkinson's Report and Recommendation in this case.[47]

---

[43] ECF No. 6-1 at 21, 27-28, 32-33.

[44] State Record Supplemental (hereinafter "St. R. Supp.") Vol. 1 of 1, State's 1st Cir. Writ Application, 2019-KW-0978) (copy not certified, dated, or file stamped), at 20-34, Exh. B, Motion to Correct Error, 9/20/18.  The State again failed to provide as ordered certified copies of any of state court records and pleadings filed during Thibodeaux's second post-conviction proceedings.  Instead, the State presented mostly unfiled and/or unsigned copies of its own pleadings and exhibits.

[45] *Id*. at 24-25.

[46] *Id*. at 35-37, Exh. C, State's Procedural Objections, 11/29/18.

[47] *Id*. at 38-41, Exh. D, Opposition to Procedural Objections, 4/23/19.

At an April 24, 2019, evidentiary hearing, the state trial court overruled the State's procedural objections finding that confrontation violation claim was not new, and that the court, itself, had inadvertently failed to address the standalone confrontation violation claim presented in Thibodeaux's original post-conviction application filed in 2015.[48]   The court ordered additional briefing from the state on the merits of Thibodeaux's claims.[49]

In its answer on the merits, the State again argued that the application was barred as successive under LA. CODE CRIM. PROC. art. 930.4(E).[50]   The State referenced the earlier findings by this federal court and the Louisiana Supreme Court that Thibodeaux did not raise a standalone confrontation violation claim in his first state court application for post-conviction relief.[51]   The State also argued that Thibodeaux failed to meet his burden of proving that the witnesses were not available or that it was the State's obligation to announce the witnesses availability, as was previously discussed by the Louisiana Supreme Court when it denied his first application.[52]   The State also argued that Thibodeaux failed to lodge a contemporaneous objection to the introduction of the witnesses' recorded statements leaving him no recourse except under *Strickland*.[53]   At a June 24, 2019, hearing, the state trial court granted the application and citing *Crawford v. Washington*, 541 U.S. 36 (2004), ordered a new trial be held based on violation of Thibodeaux's confrontation rights.[54]

---

[48] *Id*. at 54-55, Exh. F, Hearing Tr., 4/29/19.
[49] *Id*. at 55.
[50] *Id*. at 44-46, Exh. E, Answer on the Merits, 5/28/19.
[51] *Id*. at 44-45.
[52] *Id*. at 48.
[53] *Id*. at 48-50.
[54] *Id*. at 65-68, Exh. G, Hearing Tr. at 8-11, 6/24/19; *id*. at 71, Exh. H, Minute Entry, 6/24/19.

On September 17, 2019, the Louisiana First Circuit granted the State's writ application and reversed the state trial court's ruling on the motion to correct error.[55]  The court reiterated the Louisiana Supreme Court's 2017 holdings that Thibodeaux did not assert a standalone confrontation violation claim in his original post-conviction application, prove or assert that the Louisiana statute allowing use of the videotapes was unconstitutional, show that the victims were unavailable, or prove prejudice when he did not show that the victims' testimony would have been different at trial.[56]  The court held that, in light of these findings, the state trial court had no authority under state law to revisit the issues.[57]  The court refused to consider Thibodeaux's request for rehearing on the basis that he failed to timely file an application for rehearing.[58]

On July 17 and 24, 2020, the Louisiana Supreme Court denied two of Thibodeaux's subsequent writ applications (both seeking review of the Louisiana First Circuit's September 17, 2019 ruling) as untimely filed under LA. SUP. CT. R. X § 5.[59]  Also, on July 24, 2020, the Louisiana Supreme Court denied a third, timely writ application filed by Thibodeaux's appointed counsel.[60] The court ruled that Thibodeaux's application for post-conviction relief (i.e., the Motion to Correct Error) was not timely filed under LA CODE CRIM. PROC. art. 930.8, and he failed to prove that an

---

[55] *State v. Thibodeaux*, No. 2019-KW-0978, 2019 WL 4450344, at *1 (La. App. 1st Cir. 9/17/2019); St. R. Supp. Vol. 1 of 1, State's 1st Cir. Writ Application, 2019-KW-0978 (copy not certified, dated, or file stamped).

[56] *Thibodeaux*, 2019 WL 4450344, at *1.

[57] *Id*.

[58] *Id*.; St. R. Supp. Vol. 1 of 1, 1st Cir. Order, 2019-KW-0978, 1/22/20.

[59] *State v. Thibodeaux*, 298 So. 3d 175 (La. 7/17/2020) (La. Sup. Ct. Writ No. 2020-KH-0098); *State v. Thibodeaux*, 299 So. 3d 70 (La. 7/24/2020) (La. Sup. Ct. Writ No. 2020-KH-0198); St. R. Supp. Vol. 1 of 1, La. Sup. Ct. Letter, 2020-KH-0098, 1/15/20.   The State failed to produce a copy of this writ application.

[60] *State v. Thibodeaux*, 299 So. 3d 58 (La. 7/24/2020) (La. Sup. Ct. Writ No. 2019-KP-1663).   The State failed to produce a copy of this writ application.

exception applied.[61]   The court also found the application repetitive under LA. CODE CRIM. PROC. art. 930.4.[62]   The court declined to consider Thibodeaux's application for rehearing citing LA. SUP. CT. R. X § 6.[63]

## III.   THE CURRENT FEDERAL HABEAS PETITION

Petitioner's initial January 10, 2018 federal habeas petition, as supplemented by his September 23, 2020 filing, asserts the following claims:

(1)   he received ineffective assistance of counsel at trial when his trial counsel failed to (a) investigate the claims, interview witnesses, or consult petitioner about a possible alibi defense, and (b) call and cross-examine witnesses against him to protect his confrontation rights;

(2)   the trial court erred in sentencing him on count two, aggravated incest, under LA. REV. STAT. ANN. §14.78.1(D)(2); and

(3)   he was denied a fair trial when his rights under the Confrontation Clause were violated because the victims' video-taped interviews were admitted at trial without an opportunity for him to cross-examine the victims.[64]

In his supplemental memorandum, Thibodeaux also argued that the state courts erred in relying on the state "law of the case" rules when addressing his second post-conviction application and in failing to consider his confrontation right claim on the merits.[65]

---

[61] *Id*. (citing *State ex rel. Glover v. State*, 660 So. 2d 1189, 1201 (La. 1995) (a state appellate court can impose the bar under LA. CODE CRIM. PROC. art. 930.8 even if it was not applied by the lower court)). Under Article 930.8, a defendant has two years from finality of his conviction and sentence to file for post-conviction relief.   The exceptions to the time limit include an application based on facts not known to the petitioner or his prior attorneys and a new, retroactive interpretation of constitutional law.
[62] *Id*.
[63] *State v. Thibodeaux*, 305 So. 3d 102 (La. 11/24/2020) (La. Sup. Ct. Writ No. 2019-KP-1663); St. R. Supp. Vol. 1 of 1, Application for Rehearing, 19-KP-1663, dated by counsel 8/10/20.
[64] ECF No. 6-1 at 1, 5-6, 20, 21, 27-28, 32-33, and 39-40; ECF No. 16 at 10-16.
[65] ECF No. 16, at 10, 15-16.

The State filed responses in opposition to Thibodeaux's federal petition and supplemental memorandum conceding timeliness.[66]   The State asserts that Thibodeaux failed to establish that he received ineffective assistance under the *Strickland* standards.[67]   The State also contends that Thibodeaux's confrontation violation claim still is not exhausted, is in procedural default, and otherwise was not preserved for post-conviction review under Louisiana law.[68]   The State subsequently provided the Louisiana Supreme Court order denying Thibodeaux's motion for rehearing to complete exhaustion.[69]

In his reply to the State's opposition, Thibodeaux argues that, in addition to his ineffective assistance of counsel claims, this federal habeas court should consider his standalone claim that his confrontation rights were violated by the presentation of the victims' videotaped interviews without an opportunity for cross-examination.[70]

## III.   LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.   The AEDPA went into effect on April 24, 1996,[71] and applies to habeas petitions filed after that date.[72]   Thibodeaux's petition is deemed filed on December 20, 2017.[73]

---

[66] ECF Nos. 11, at 6; *see also* ECF No. 21, State's Answer to Supplemental Response.

[67] ECF No. 11, at 7-8.

[68] *Id*. at 9; ECF No. 21, at 1, 6-8, and 11-13.

[69] ECF No. 29; *see also* ECF No. 30.

[70] ECF Nos. 24; *see also* ECF No. 25 (Thibodeaux's Supplemental Traverse).

[71] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[72] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[73] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court

### A.    **Preliminary Considerations**

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court.   In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[74]   The State concedes that Thibodeaux's federal habeas petition is timely filed.[75]   The State initially argued that Thibodeaux's confrontation violation claim is not exhausted and is procedurally defaulted, but later provided the Louisiana Supreme Court order denying his motion for rehearing to complete exhaustion.[76]   The State further contends that "turning to the merits of the alleged Confrontation Clause violation," the claim was not preserved for appellate review under state law and not properly asserted on post-conviction review.[77]

### 1.    **Exhaustion Doctrine**

The State contends that Thibodeaux did not assert a standalone claim of confrontation violation in his first state court application and failed again to do so when he returned to state court during the stay ordered by this court.   Thus, he has failed to exhaust state court review of a standalone confrontation violation claim.   Thibodeaux does not specifically address the exhaustion issue *per se*.   Instead, he generally contends that he has presented a standalone claim

---

is considered the time of filing for limitations purposes.   *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The clerk of court provisionally filed Thibodeaux's deficient petition upon electronic receipt on December 20, 2017.   ECF No. 1 (deficient petition).   The official stamps of the prison legal department indicate that December 20, 2017, was the date on which the pleadings were received from Thibodeaux for electronic mailing to a federal court.   ECF No. 1, at 14; ECF No. 6-1, at 14.   Payment of the filing fee does not alter application of the federal mailbox rule.   *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).
[74] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).
[75] ECF No. 16, at 5-6.
[76] ECF No. 21, at 10-12; ECF No. 29 (Louisiana Supreme Court order).
[77] *Id*. at 12-13.

and outlines his efforts to present the claim to each of the state courts.   For the following reasons, the record demonstrates that Thibodeaux presented and exhausted state court review of his standalone claim under Confrontation Clause.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."[78]   A federal habeas petition should be dismissed if state remedies have not been exhausted as to *all* of the federal habeas claims and supporting arguments brought by the petitioner.[79]

The exhaustion requirement is satisfied when the substance of the federal habeas claims has been "fairly presented to the *highest* state court" in a procedurally proper manner.[80]   "State prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary review procedures.[81]   The federal claim also must be "the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."[82]   "This requirement is not satisfied if the petitioner presents *new legal theories* or *new factual claims* in his federal application."[83]   It also is not

---

[78] *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419.

[79] *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

[80] *Whitehead*, 157 F.3d at 387 (emphasis added) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).

[81] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added); *Duncan v. Walker*, 533 U.S. 167, 177-79 (2001); *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings."); *accord Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (fair presentation means presentation to "each appropriate state court").

[82] *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).

[83] *Id.* at 387 (citing *Nobles*, 127 F.3d at 420) (emphasis added).

enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court in a procedurally proper manner.[84]

Thibodeaux's 2018 *pro se* "Motion to Correct Error" was construed by the state courts as an application for post-conviction relief.   In its procedural response to the pleading in the state trial court, the State acknowledged this:

> The petitioner, Timothy Thibodeaux, has filed a Motion to Correct Error, which this Honorable Court has considered as an application for post-conviction relief . . . .[85]

In that pleading, Thibodeaux again entangled his confrontation violation claim with the deficient performance of his trial counsel.[86]   However, on the last page of the *pro se* pleading, Thibodeaux separately explained two facets of the Confrontation Clause applicable to his case and urged as follows:

> In the instant case, Petitioner was never afforded the opportunity to cross-examine any of the witnesses against him.   Whether they were unavailable or not, whether it was due to the ineffectiveness of counsel, or whether it was by judicial overreach, the outcome was the same nevertheless.
>
> A clear and obvious mistake was made by all courts in the State of Louisiana except the Appellate Court which determined the mistake was responsible for Petitioner being convicted at a trial that was unconstitutional.[87]

By this broader discussion, Thibodeaux expressed his entitlement to relief under the Confrontation Clause beyond ineffective assistance and referenced the Louisiana First Circuit's prior recognition that he had a standalone Confrontation Clause claim.   Thus, broadly construing the *pro se*

---

[84] *See Baldwin*, 541 U.S. at 32 (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim); *see also Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (a petitioner fails to exhaust a claim when he raises it for the first time in the Louisiana Supreme Court after bypassing the state district and appellate courts).

[85] St. R. Supp. Vol. 1 of 1, State's 1st Cir. Writ Application, 2019-KW-0978, at 35-37 (copy not certified, dated, or file stamped), Exh. C, State's Procedural Objections, 11/29/18.

[86] *Id*. at 24-32, Exh. B, Motion to Correct Error, 9/20/18.

[87] *Id*. at 33.

pleading, if he had not raised this issue in his initial post-conviction relief application, Thibodeaux at least presented a standalone claim of confrontation violation to the state courts in his Motion to Correct Error.

As outlined in detail previously, the Louisiana Supreme Court ultimately offered the final resolution on Thibodeaux's standalone Confrontation Clause claim, finding that Thibodeaux's post-conviction application (the Motion to Correct Error) was not timely under LA. CODE CRIM. PROC. art. 930.8 (and met no exception or excuse) and was repetitive under LA. CODE CRIM. PROC. art. 930.4.[88]   At a minimum, Thibodeaux has now given each level of the Louisiana courts a "fair opportunity"[89] to consider his claim that he was denied his right under the Confrontation Clause to cross-examine the victims before their out-of-court interviews were relied on at trial.   Even if the claim were not exhausted, this Court exercises its authority to overlook any failure to properly exhaust to consider Thibodeaux's claim.[90]

### 2.   Procedural Default of Claim Three: Confrontation Right Violation

The State argues that, if exhausted, Thibodeaux's standalone Confrontation Clause claim is procedurally barred, generally referencing the Louisiana Supreme Court's 2020 decision finding that Thibodeaux's claim was untimely LA. CODE CRIM. PROC. art. 930.8 and the application repetitive under LA. CODE CRIM. PROC. art. 930.4.[91]   The State contends that the state court's imposition of these procedural rules bars review of the claim in this federal court.   Thibodeaux

---

[88] *Thibodeaux*, 299 So. 3d at 58 (La. Sup. Ct. Writ No. 2019-KP-1663).
[89] *Mercadel*, 179 F.3d at 275.
[90] 28 U.S.C. § 2254(b)(2).
[91] The State also references other state procedural rules which would prevent review of a post-verdict claim without a contemporaneous objection having been made at trial.   ECF No. 21, at 12-13.   No state court has imposed or relied upon any such rule to prevent review of Thibodeaux's standalone Confrontation Clause claim.   The State's conjecture is not relevant to this court's review.

did not specifically address the State's procedural bar defense in his reply memoranda.   Instead, he argued the general merits of his underlying Confrontation Clause and ineffective assistance of counsel claims.

A federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.[92]   This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.[93]   Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.[94]   Imposition of a procedural bar also prevails to prevent federal court review over any alternative discussion of the merits of the claim by a state court.[95]   On federal habeas review, the court looks to the last reasoned opinion of the state courts to determine whether denial of relief was on the merits or based on state law procedural grounds.[96]

a.     Last State Court Ruling

The last state court disposition of Thibodeaux's standalone confrontation violation claim was that of the Louisiana Supreme Court on July 24, 2020.   While both the state trial court (via

---

[92] *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)); *Ramirez v. Stevens*, 641 F. App'x 312, 319 (5th Cir. 2016).

[93] *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

[94] *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)).

[95] *Rhoades*, 914 F.3d at 372; *Robinson v. Louisiana*, 606 F. App'x 199, 204 (5th Cir. 2015) (citing *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010)).

[96] *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.")

its June 24, 2019 ruling) and the state appellate court (i.e., the Louisiana First Circuit via its February 26, 2016 ruling) have at separate times concluded that Thibodeaux intended to assert a standalone confrontation clause claim in his first state application for post-conviction relief in 2013 and both courts have found the confrontation clause claim meritorious and sufficient to order a new trial, the Louisiana Supreme Court has ruled to the contrary.    In 2017, the Louisiana Supreme Court could have accepted the First Circuit's 2016 broader reading of Thibodeaux's *pro se* state court pleadings to find that the standalone confrontation clause had been asserted, but it did not.[97] Instead, the court concluded that petitioner failed to present a free-standing confrontation clause claim in 2013 when it reversed the First Circuit's 2016 decision holding otherwise.

On petitioner's 2018 return to the state courts during the stay of this federal matter, the standalone Confrontation Clause claim was presented in his *pro se* application (i.e., Motion to Correct Error), the disposition of which was pursued by his appointed counsel in the higher state courts.[98]    The trial court accepted the Motion to Correct as a post-conviction application (admitting the court's own failure to address that issue when raised in his 2013 petition) and found the Confrontation Clause claim to be meritorious.    But the First Circuit reversed that decision, citing the Louisiana Supreme Court's 2017 decision.    The Louisiana Supreme Court then affirmed the First Circuit's decision that the trial court was procedurally barred from considering

---

[97] *See State ex. rel. Egana v. State*, 771 So.2d 638 (La. 9/22/00) (recognizing the "less stringent" principles applicable in review of *pro se* prisoner's post-conviction pleadings) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

[98] St. R. Supp. Vol. 1 of 1, State's 1st Cir. Writ Application, 2019-KW-0978) (copy not certified, dated, or file stamped), at 20-34, Exh. B, Motion to Correct Error, 9/20/18; *see also State v. Thibodeaux*, 299 So. 3d 58 (La. 7/24/2020) (La. Sup. Ct. Writ No. 2019-KP-1663); *State v. Thibodeaux*, No. 2019-KW-0978, 2019 WL 4450344, at *1 (La. App. 1st Cir. 9/17/2019).

petitioner's subsequent attempt to raise the Confrontation Clause claim via the 2018 Motion to Correct.

Under the AEDPA, "[w]here a higher state court has ruled on a petitioner's [post-conviction] motion on grounds different than those of the lower court, we review the higher court's decision alone."[99]   Thus, the role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow.   Federal courts must respect the conscientious decisions of state courts and promote comity, federalism, and finality through the dutiful application of the AEDPA.[100]   In this case, the last reasoned decision disposing petitioner's Confrontation Clause claim is the Louisiana Supreme Court's July 24, 2020, order imposing timeliness and successiveness bars to review under LA. CODE CRIM. PROC. arts. 930.8 and 930.4.[101] Under § 2254 and the AEDPA, this Court's review is limited to that last reasoned state court decision disposing of the claim, whether on the merits or by procedural bar,[102] and the procedural bar doctrine precludes this Court's independent review of petitioner's Confrontation Clause claim via this habeas petition.[103]

        b.    <u>Independent and Adequate State Law Basis</u>

For state law procedural bars to prevent review by this federal habeas court, the bars must be both independent and adequate.   The question of the adequacy of a state procedural bar is itself

---

[99]   *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012).

[100]   *See Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009).

[101]   *Thibodeaux*, 299 So. 3d at 58 (La. Sup. Ct. Writ No. 2019-KP-1663).

[102]   *Batchelor v. Cain*, 682 F. 3d 400, 405 (5th Cir. 2012) ("Under AEDPA, we review 'the last reasoned state court decision.'"); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991) (federal habeas court looks to the "last reasoned decision" of the state courts to determine if disposition was procedural).

[103]   *Cone*, 556 U.S. at 465 (independent and adequate state court procedural bar prevents federal habeas review); *Rhoades*, 914 F.3d at 372 (same).

a federal question.[104]    A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.[105]    The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits.[106]    To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.[107]    A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."[108]    However, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.[109]

On habeas review, state procedural rules enjoy a presumption of adequacy, and the burden is on the petitioner to demonstrate otherwise.[110]    It also is not the federal habeas court's province to disagree with the application of the bar or to correct state court errors.[111]    It is only to determine its adequacy.[112]    Thus, when state courts apply a procedural bar that has neither foundation in the

---

[104] *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee*, 534 U.S. at 375).

[105] *Rhoades*, 914 F.3d at 372; *Rogers v. Mississippi*, 555 F. App'x 407, 408 (5th Cir. 2014).

[106] *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).

[107] *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard*, 558 U.S. at 60); *Rogers*, 555 F. App'x at 408; *see also Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases).

[108] *Beard*, 558 U.S. at 60-61.

[109] *Martin v. Maxey*, 98 F.3d 844, 847-48 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

[110] *Glover*, 128 F.3d at 902; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

[111] *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

[112] *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.).

record nor basis in state law, federal courts need not honor that bar.[113]    However, when a foundation and basis exist in the record, as they do in Thibodeaux's case, the bar must stand.

i.   La. Code Crim. Proc. art. 930.8

As noted previously in this report, La. Code Crim. Proc. art. 930.8 addresses the timeliness of the application, which must be filed within two years of finality of the defendant's conviction.   The record reflects that Thibodeaux's conviction was final in 2013, more than two years before he filed his 2018 state court application.   Although the trial court (in 2020) and the First Circuit Court of Appeal (in 2016) found that petitioner did raise a standalone Confrontation Clause claim in his timely 2013 post-conviction application, the Louisiana Supreme Court ruled otherwise in 2017 and found untimely petitioner's effort to raise the issue via the 2018 application (i.e., Motion to Correct).

The United States Fifth Circuit has held that denial a post-conviction application or claim as untimely under La. Code Crim. Proc. art. 930.8 is an independent state law basis for purposes of the procedural default doctrine.[114]   The Fifth Circuit also has squarely held that La. Code Crim. Proc. art. 930.8 is an adequate rule regularly followed by the state courts to bar review of untimely claims.[115]

---

[113] *See e.g.*, *Davis v. Johnson*, No. 00CV684, 2001 WL 611164, at *4 & n.10 (N.D. Tex. May 30, 2001); *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. Dec. 5, 2011); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. Jul. 20, 1999).

[114] *Glover*, 128 F.3d at 902; *Morris v. Cain*, No. 06-30916, 2008 WL 3876479, at *1 (5th Cir. Aug. 20, 2008); *Pineyro v. Cain*, 73 F. App'x 10, 11 (5th Cir. 2003).

[115] *Williams v. Dep't of Corrs.*, 444 F. App'x 833, 834 (5th Cir. 2011) (citing *Glover*, 128 F.3d at 902).

ii. LA. CODE CRIM. PROC. art. 930.4(E)

LA. CODE CRIM. PROC. art. 930.4, also cited by the Louisiana Supreme Court, provides several grounds for the state courts to decline review of applications that are repetitive. The Louisiana Supreme Court ruled in 2017 that Thibodeaux did not assert his Confrontation Clause claim in his first state court application. Thus, Thibodeaux's effort to assert the confrontation violation claim in his second state court post-conviction application was barred as repetitive under Article 930.4(E). This provision specifically precludes review of an application that asserts a claim inexcusably omitted from a prior application.

The United States Fifth Circuit has recognized that LA. CODE CRIM. PROC. art. 930.4(E), as it is regularly applied, constitutes an independent and adequate state-law procedural ground to support a procedural bar to federal habeas review.[116]

iii. Summary

The Louisiana Supreme Court's 2020 ruling was based on regularly and evenly applied Louisiana laws setting forth the procedural requirements for preservation and presentation of claims for post-conviction review.[117] The reasons for dismissal of Thibodeaux's standalone Confrontation Clause violation claim were independent of federal law and adequate to bar review of his claim in this federal habeas court. Only if Thibodeaux meets an exception to this rule could he be excused from this procedural bar.

---

[116] *Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *4-5 (5th Cir. 2001) (unpub.); *Besse v. Tanner*, No. 16-2992, 2017 WL 2936311, at *8 (E.D. La. July 7, 2017); *Bell v. Baton*, No. 11-0304, 2012 WL 5364239, at *3 (M.D. La. Sep. 24, 2012), *R. & R. adopted by* 2012 WL 5364237, at *1 (M.D. La. Oct. 31, 2012).

[117] *See Rogers*, 555 F. App'x at 408 (state courts' clear reliance on state procedural rule is determinative of the issue).

c.    Cause and Prejudice

A federal habeas petitioner may be excused from the procedural default rule if he can show "cause" for his default *and* "prejudice attributed thereto."[118]    To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.[119]    The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.[120]    The Supreme Court has declined to give a precise definition for the term "actual prejudice" and instead requires the reviewing court to impose due process considerations regarding the impact of the alleged error or default on the outcome of the proceeding.[121]

In this case, Thibodeaux did not address cause or prejudice as they relate specifically to the State's procedural default defense.    However, Thibodeaux has asserted throughout his state post-conviction proceedings and in his federal petition that the failure to protect his Confrontation Clause rights at trial was the result of his trial counsel's ineffective assistance.    He also argues that his claim was not fairly presented to (or preserved in) the state courts because of his trial counsel.[122]    Broadly construing his pleadings, this appears to express cause for his failure to timely and properly assert the right or the claim in the state courts.    Thibodeaux has exhausted state court

---

[118] *Gonzales v. Davis*, 924 F.3d 236, 241-42 (5th Cir. 2019) (citing *Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262).

[119] *Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule."); *Gonzales*, 924 F.3d at 242 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[120] *Murray*, 477 U.S. at 486.

[121] *United States v. Frady*, 456 U.S. 152, 167-68 (1982) (citing *Wainwright*, 433 U.S. at 91).

[122] ECF No. 16, at 15-16.

review of this ineffective assistance of counsel claim, and may rely on it as cause for his default.[123] "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," undermining the finality of jury verdicts.[124]  For this reason, the rules governing ineffective-assistance claims "must be applied with scrupulous care."[125]  As discussed later in this report, even if Thibodeaux can establish ineffective assistance of counsel under one prong of the *Strickland* analysis, he has not established ineffective assistance under **both** prongs of the *Strickland* analysis.   Where, as here, a petitioner's ineffective assistance of counsel claim is meritless, it does not establish cause to excuse a procedural default.[126]

Therefore, Thibodeaux has established no cause, and the record reflects none, to excuse the procedural bars imposed by the Louisiana Supreme Court.  The record does not support a finding that any external factor prevented Thibodeaux or his counsel from asserting the claims in a procedurally proper manner.  Although I may disagree with the Louisiana Supreme Court's decision, my disagreement with that court's decision does not allow me to ignore the procedural bar to review of the merits under the AEDPA.  The record does not reflect any action or inaction on the part of the prosecution or the state courts that prevented Thibodeaux from doing so.

---

[123] *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (holding that "ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim.   And we held in [*Murray*, 477 U.S. at 488-89] that the principles of comity and federalism that underlie our longstanding exhaustion doctrine—then as now codified in the federal habeas statute, see 28 U.S.C. §§ 2254(b), (c) - require that constitutional claim, like others, to be first raised in state court").

[124] *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

[125] *Premo v. Moore*, 562 U.S. 115, 122 (2011).

[126] *Bella v. Cain*, No. 12-2323, 2015 WL 1311216, at *16 (E.D. La. Mar. 23, 2015); *Arita v. Cain*, No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), *R. & R. adopted by* 2011 WL 4738658, at *1 (E.D. La. Oct. 6, 2011), *aff'd*, 500 F. App'x 352 (5th Cir. 2012).

"If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice."[127]   Thus, the court in this case need not determine whether prejudice resulted. Nonetheless, Thibodeaux has not alleged and the record does not demonstrate any actual prejudice of the kind necessary to excuse his default.[128]   Accordingly, Thibodeaux's Confrontation Clause claim is procedurally barred from review in this federal habeas court.

### d.    Fundamental Miscarriage of Justice

Thibodeaux also may avoid the procedural bar to review of his claim if a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed.[129]   To establish a fundamental miscarriage of justice, Thibodeaux must provide this court with evidence that would support a "colorable showing of factual innocence."[130]   He would have to establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt.[131]   "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."[132]   When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.[133]

---

[127] *Matchett v. Dretke*, 380 F.3d 844, 848-49 (5th Cir. 2004) (internal quotations omitted) (quoting *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997)); *Martin*, 98 F.3d at 849 (same).

[128] *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134, n.43 (1982)).

[129] *Gonzales*, 924 F.3d at 241-42.

[130] *Murray v. Quarterman*, 243 F. App'x 51, 55 (5th Cir. 2007).

[131] *Id*. (citing *Bagwell v. Dretke*, 372 F.3d 748, 756 (5th Cir. 2004)); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

[132] *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

[133] *Woodfox*, 609 F.3d at 793.

At trial, Thibodeaux testified and denied exposing himself or having sexual contact with his daughters.[134]   Since that time, however, as noted by the state courts, Thibodeaux presented no evidence to refute the veracity of the videotaped witness testimony.   He has presented nothing to call into doubt the verdict or prove his innocence other than his contrary assertion already rejected by the factfinder.   Thibodeaux presents nothing to this court   to establish actual innocence on the underlying crimes to compel this court to consider his defaulted claim, which is not a claim addressing his guilt or innocence.   In other words, Thibodeaux fails to present any evidence or argument of actual innocence to excuse his procedural default of this claim.

       e.    <u>Summary</u>

Thibodeaux has failed to establish cause or prejudice, or a fundamental miscarriage of justice, to overcome the procedural bar to review of his standalone Confrontation Clause issue. For the foregoing reasons, the claim should be dismissed with prejudice as procedurally barred.

**B.**    <u>**Thibodeaux's Remaining Claims**</u>

    **1.**  **Standards of a Merits Review of the Remaining Claims**

Tile 28 U.S.C. § 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[135] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[136]   The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear

---

[134] St. R. Vol. 1 of 3, Trial Tr. at 124-178, 6/20/11.

[135] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[136] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.   28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).   The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[137]   The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[138]

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[139]   "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[140]

---

[137] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[138] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

[139] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington*, 562 U.S. at 103; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[140] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[141]    Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[142] The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[143]

### 2.    Claim One: Ineffective Assistance of Counsel

Thibodeaux argues that he received ineffective assistance of counsel when his trial counsel failed to investigate the claims against him, interview witnesses, and consult with him about a possible alibi defense.[144]    He also alleges that counsel was ineffective when he failed to object to the videotape or call and cross-examine witnesses to protect his confrontation rights.

In its opposition response, the State asserts that Thibodeaux has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*.

### a.    State Court Rulings

The last reasoned opinion on Thibodeaux's 2013 post-conviction application was that of the Louisiana Supreme Court in 2017, when it granted the State's related writ application.[145]    The Louisiana Supreme Court found that the state trial court correctly applied *Strickland* when it held

---

[141] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[142] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[143] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

[144] ECF No. 6-1 at 21, 27-28, and 32-33.

[145] *Thibodeaux*, 227 So. 3d at 811; St. R. Vol. 3 of 3, La. Sup. Ct. Order, per curiam at 1, 2016-KP-0994, 10/27/17.

that defense counsel's failure to cross-examine the victims was deficient but not prejudicial.    This references the state court's ruling denying Thibodeaux relief after two-day evidentiary hearing.[146] The Louisiana Supreme Court also found that Thibodeaux failed to prove that prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648, 659 (1984).[147]    The court determined that Thibodeaux's counsel "vigorously cross-examined the case detective and forensic interviewer while also highlighting in closing arguments the significant discrepancies in the victims' 2007 and 2009 interviews."[148]    Relying on this and its conclusion that Thibodeaux failed "to show how the victims might have testified differently at trial or responded to cross-examination," the court reinstated (and effectively adopted) the trial court's *Strickland* analysis.[149]    In that ruling, the state trial court found that, under *Strickland* standards, Thibodeaux's trial counsel may have admitted his deficient performance, but there was no evidence to support his admission or to establish that, but for his actions or inactions, the outcome of the trial would have been different.[150]

b.    AEDPA Standards Applied to *Strickland*

The issue of ineffective assistance of counsel is a mixed question of law and fact.[151]    Under the AEDPA standards, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

---

[146] *See* St. R. Vol. 3 of 3, Hearing Tr., 10/15/15; *id.,* Hearing Tr., at 67, 10/22/15.

[147] *Thibodeaux*, 227 So. 3d at 812; St. R. Vol. 3 of 3, La. Sup. Ct. Order, per curiam at 2, 2016-KP-0994, 10/27/17.

[148] *Thibodeaux*, 227 So. 3d at 812; St. R. Vol. 3 of 3, La. Sup. Ct. Order, per curiam at 2, 2016-KP-0994, 10/27/17.*Id.*

[149] *Thibodeaux*, 227 So. 3d at 812; St. R. Vol. 3 of 3, La. Sup. Ct. Order, per curiam at 2-3, 2016-KP-0994, 10/27/17.

[150] St. R. Vol. 3 of 3, Hearing Tr., at 67, 10/22/15

[151] *Strickland*, 466 U.S. at 698; *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox*, 609 F.3d at 789.

i.   *Cronic* Does Not Apply

Broadly construing his pleadings, Thibodeaux contends that the presumption of prejudice under *Cronic*, 446 U.S. at 648, is the Supreme Court precedent to be followed in this case.   He asserts that because his counsel's actions were so deficient, prejudice should be presumed under *Cronic* and not tested under *Strickland*.[152]   In *Cronic*, the Supreme Court recognized that prejudice may be presumed when the performance of counsel is so inadequate that it constitutes a constructive denial of or no assistance of counsel at all despite the physical presence of an attorney at the proceeding.[153]   The *Cronic* presumption of prejudice arises under these circumstances:

(1)    there exists an absence or a denial of counsel "at a critical stage" of defendant's criminal proceedings;

(2)    defense counsel fails to "subject the prosecution's case to meaningful adversarial testing;" or

(3)    counsel "is called upon to render assistance where competent counsel very likely could not."[154]

Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation could be found.[155]

"For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court has held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding.[156]   The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points

---

[152]  ECF No. 6-1, at 27-28.
[153]  *Cronic*, 466 U.S. at 648, 654 n.11.
[154]  *Id*. at 658-59; *Bell v. Cone*, 535 U.S. 685, 695-97 (2002).
[155]  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).
[156]  *Bell*, 535 U.S. at 697.

is a "difference . . . not of degree but of kind."[157]    Thus, the *Cronic* standard applies *only* when counsel has *entirely* failed to challenge the prosecution's case.[158]    The Supreme Court has emphasized that this means "the attorney's failure must be complete."[159]    "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel.    [B]ad lawyering, regardless of how bad, does not support the per se presumption of prejudice."[160]    The petitioner has the burden to show that he was constructively denied counsel.[161]

Here, Thibodeaux alleges that the second *Cronic* circumstance existed, because his trial counsel completely failed to meaningfully test the State's evidence, *i.e.* the videotapes, presumably by failing to question his ex-wife S.T. and his daughters.    However, the *Cronic* exception applies only if defense counsel's failure is "complete."[162]    As determined by the state courts, Thibodeaux's counsel continuously and vigorously cross-examined the State's witnesses, including the investigating officer.    Counsel also recalled the officer and Thibodeaux as witnesses in an effort to cast doubt on the allegations of rape and incest.    While counsel's actions appears to have failed in critical aspects, as will be discussed below, his performance was not a complete failure under the extreme parameters of *Cronic*.    Therefore, *Strickland*, not *Cronic*, is the clearly

---

[157] *Id.*

[158] *Id.*; *Riddle v. Cockrell*, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); *Mayo v. Cockrell*, 287 F.3d 336, 340 n.3 (5th Cir. 2002); *Burdine v. Johnson*, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

[159] *Bell*, 535 U.S. at 697.

[160] *Johnson v. Cockrell*, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998)) (quoting *Childress v. Johnson*, 103 F.3d 1221, 1228-29 (5th Cir. 1997)).

[161] *Childress*, 103 F.3d at 1228, 1231-32.

[162] *Cronic*, 466 U.S. at 659; *Bell*, 535 U.S. at 697.

established federal law governing Thibodeaux's claims and was correctly applied by the state courts.

>    ii. *Strickland* Standards

In *Strickland*, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[163]    The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[164]    Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[165]    A court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of a claim based solely on a petitioner's failure to meet either prong of the test.[166]    A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[167]

>    iii. Counsel's Performance was Not Objectively Reasonable under *Strickland*'s Deficiency Prong

On habeas review, the Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional

---

[163]  *Strickland*, 466 U.S. at 697.

[164]  *Id.* at 687-88.

[165]  *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[166]  *Kimler*, 167 F.3d at 893.

[167]  *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

norms, not whether it deviated from best practices or most common custom."[168]   Federal habeas courts normally must presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.[169]

Thibodeaux's trial counsel is not entitled to this presumption of reasonableness.   By his own admissions, trial counsel had no understanding of the Confrontation Clause or appreciation for the fact that he could have called witnesses aside from the video or subpoenaed witnesses to secure their presence at trial.   He made no strategic decisions about these matters because he did not understand their existence or magnitude.   As the state courts recognized, Thibodeaux's counsel admittedly failed to meet expected practice standards for an attorney in Louisiana.   State malpractice rules do not dictate or prove ineffective assistance under the Sixth Amendment or *Strickland*.[170]   However, in Thibodeaux's case, the state courts appropriately accepted the

---

[168] *Harrington*, 562 U.S. at 105.

[169] *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

[170] *See Bender v. Carter*, No. 14-35, 2014 WL 6775627, at *5, 13 (N.D. W. Va. Dec. 2, 2014) ("This Court finds that the petitioner has not established a claim for ineffective assistance of counsel as a finding of legal malpractice does not establish a basis for ineffective assistance of counsel . . . Without more than the petitioner's blanket claim that he is entitled to relief because of the malpractice finding, this Court cannot find that the petitioner has proven the elements for a claim of ineffective assistance of counsel.  . . . [t]he undersigned notes that '[a]n action to vacate a criminal judgment based on ineffective assistance of counsel is not the same as a cause of action for legal malpractice.   A claim of ineffective assistance of counsel is based on constitutional guarantees and seeks reversal of a criminal conviction.   Legal malpractice is a common-law action, grounded in tort, which seeks monetary damages.'   Therefore, establishing legal malpractice does not establish a basis for reversing a conviction." (citations omitted)); *Theriault v. Maine*, No. 16-00576, 2017 WL 3812867, at *11 (D. Me. Aug. 31, 2017) ("Even when the Defendant's attorney was disciplined or disbarred, most courts have generally still required criminal defendants to satisfy the full *Strickland* tests of performance and prejudice in order to establish an ineffective assistance claim.") (citing *Crawford v. Lampert*, 98 F. App'x 636, 638 (9th Cir. 2004) (concluding that "disbarment, by itself, does not establish a claim of ineffective assistance of counsel"); *United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C. Cir. 2000) (holding that "the fact of suspension does not, by itself, render counsel ineffective under the Sixth Amendment.   Instead, the normal *Strickland* rule applies and a defendant must meet his burden of showing deficient performance at trial which resulted in prejudice")).

malpractice admission by counsel and his statements during the post-conviction hearing about his performance errors as confirmation of trial counsel's "incompetence under prevailing professional norms" satisfied the deficiency prong of *Strickland*.[171]   The record and counsel's admissions confirm this finding and I agree with the state courts' conclusion that the performance of Thibodeaux's trial counsel was deficient.   Counsel actions were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[172]

The state courts went on to   deny Thibodeaux relief based on a finding that Thibodeaux failed to prove prejudice, *i.e.* an adverse impact on the outcome of trial, under the second prong of *Strickland*.   I must address the state courts' findings under the prejudice prong using the deferential standards of the AEDPA.c.   Failure   to   Investigate   and   Interview Witnesses

Thibodeaux argues that his counsel was ineffective for failing to investigate plausible defenses and interview witnesses, like his ex-wife, S.T., to establish what he calls "an alibi." Thibodeaux claims that had his counsel spoken to him about S.T. and her mother, counsel would have known that she is a habitual liar and her testimony could have cast doubt on his guilt.[173]

At the state trial court's October 15, 2015, post-conviction hearing, Thibodeaux's counsel admitted that he was adjudged by a state court to have committed malpractice during his representation of Thibodeaux in this criminal proceeding.[174]   Counsel, however, also indicated that he requested discovery in Thibodeaux's criminal proceeding, but did not interview witnesses,

---

[171] *Harrington*, 562 U.S. at 105.
[172] *Fox v. Ward*, 200 F. 3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).
[173] ECF 6-1, at 33.
[174] St. R. Vol. 3 of 3, Hearing Transcript, at 5-6, 10/22/15.

including S.T., or hire an investigator.[175]    While he did not do follow-up investigation into all of S.T.'s background, he knew that S.T. had preexisting mental issues, pled guilty to felony endangerment of their children, and terminated her parental rights.[176]    Counsel also read letters S.T. sent to Thibodeaux in jail and attempted to reach her after she was released from jail (but before Thibodeaux's trial).[177]    At that time, she refused to speak to him.[178]

Counsel also stated that he spoke to Thibodeaux about his sentencing exposure, the family dynamics, previous investigations into allegations of their alleged child abuse or neglect, and S.T.'s history as a victim of sexual abuse.[179]    Counsel prepared Thibodeaux for his trial testimony.[180]    Counsel also indicated that, based on the investigative records of the family and other information from the juvenile court proceedings, the defense theory for trial was to establish that the daughters changed their stories and lied about the allegations underlying the charges.[181]

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[182]    However, the defense of a criminal case does not "contemplate the employment of wholly unlimited time and resources."[183]    An attorney is not necessarily ineffective for failing to investigate every conceivable, potentially nonfrivolous matter or defense.[184]    Instead, a petitioner who asserts a

---

[175] *Id*. at 10-11, 14.
[176] *Id*. at 14.
[177] *Id*. at 14, 25.
[178] *Id*. at 25.
[179] *Id*. at 18-20.
[180] *Id*. at 26.
[181] *Id*. at 13.
[182] *Strickland*, 466 U.S. at 691; *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).
[183] *Smith v. Collins*, 977 F.2d 951, 960 (5th Cir. 1992).
[184] *Id*.

claim of a failure to investigate by counsel "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"[185]   To prevail on such a claim, the petitioner must provide factual support, not mere speculation, to establish what exculpatory evidence would have been discovered or revealed through further investigation by his counsel.[186]   Even if the attorney failed to conduct a reasonable investigation, the petitioner is still required to show prejudice resulting from that failure.[187]

As concluded by the state courts, Thibodeaux has not met the requirements necessary to succeed on such a claim based on counsel's failure to investigate as it relates to his ex-wife, ex-mother-in-law, and any other unidentified alibi witnesses.   At best, Thibodeaux suggests that further investigation would have established that S.T. was a habitual liar and her mother did not like him.   Neither suggestion is necessarily exculpatory or likely to have changed the trial judge's verdict.   Thibodeaux has presented no evidence to either the state courts or this court, such as an affidavit or other statement from his ex-wife or any witnesses, showing that the witness was willing to and would have testified in a manner beneficial to the defense.   His speculative arguments are insufficient to meet his burden to establish that additional investigation into his ex-wife or ex-

---

[185] *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted); *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011); *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.") (citing *Strickland*, 466 U.S. at 696).

[186] *Moawad*, 143 F.3d at 948; *Cox v. Stephens*, 602 F. App'x 141, 146 (5th Cir. 2015) ("[b]are allegations" that counsel failed "to make an adequate investigation of potential witnesses" were insufficient to warrant relief).

[187] *Lockhart*, 782 F.2d at 1275.

mother-in-law as "alibi" witnesses would have benefited the defense.[188]    The state courts reasonably concluded that Thibodeaux is not entitled to relief under *Strickland*.

The reasonableness of the denial of relief is bolstered by application of the similar standard that requires Thibodeaux to show more than the mere existence of witnesses who should have been called at trial.    It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"[189]    Similar to the discussion above, to prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.[190]    The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"[191]

Thibodeaux has not met these requirements as it relates to any uncalled witnesses.    He has throughout his pleadings identified his ex-wife, her mother, and even his victim-daughters, as

---

[188] *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. Jul. 7, 2011) (finding unsupported claims of what witnesses would attest must be met with "great caution.") (citing *Cockrell*, 720 F.2d at 1427); *Anthony v. Cain*, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.").

[189] *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008).

[190] *Graves*, 351 F.3d at 156 ("'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (for uncalled witnesses, the petitioner must name the witness, demonstrate a consent to testify, set out proposed testimony, and show that the testimony was favorable to a particular defense.) (citing *Bray*, 265 F. App'x at 298).

[191] *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).

witnesses who should have been called at trial.   However, Thibodeaux has presented no evidence to either the state courts or this court, such as an affidavit or other statement, showing that any of these witnesses would have testified in a manner beneficial to the defense.   He offers only self-serving, speculative, and conclusory allegations that these proposed witnesses would have testified or would have done so consistently with his version of the facts surrounding the aggravated rape and aggravated incest incidents.   His allegation alone is insufficient to meet his burden of proof.[192]   Therefore, as the state courts concluded, Thibodeaux failed to meet his burden of proof with respect to this claim.

Also, to the extent Thibodeaux suggests that counsel should have discussed a viable alibi defense with him, his claim fails under *Strickland*.   Thibodeaux has not identified an actual alibi defense that may have been pursued.   He instead argues that counsel should have reinforced his "everyone lied" defense with the additional witnesses discussed above.   Thibodeaux may use the word alibi, but he offers nothing to explain or support such a defense.   As discussed above, there is no evidence that any witnesses was available and willing to offer an alibi or testify favorably to Thibodeaux's defense.

The state courts properly applied *Strickland* to reasonably conclude that Thibodeaux did not establish that his counsel provided ineffective assistance in failing to investigate the allegations, other witnesses, or an alibi defense.   The denial of relief on this issue was neither

---

[192]  *See, e.g.*, *Cockrell*, 720 F.2d at 1427 (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff*, 2011 WL 2669277, at *3 (same); *Anthony*, 2009 WL 3564827, at *8 ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.").

contrary to nor an unreasonable application of *Strickland*.   Thibodeaux is not entitled to relief on this issue.

    d.    Failure to Call Witnesses to Protect His Confrontation Rights

Thibodeaux alleges that his counsel was ineffective when he failed to cross-examine S.T. and the victims and allowed the State to rely on the videotaped interviews of the victims to prove the crimes without also proving the witnesses were available under LA. REV. STAT. ANN. § 15:440.5(A)(8).[193]    Thibodeaux argues that counsel's failures denied him a fair trial.[194]

Relevant to this part of Thibodeaux's claim, Thibodeaux's trial counsel testified at the state court post-conviction hearing as follows:

> [I] was not aware, at that time, of the law on the Confrontational [sic] Clause in the Constitution.   I was not aware of my responsibility to put the accusing witnesses on the witness list and to have them present in court.   I wasn't aware, at that time, of that part of the law.   But if I was, after I did the research, after the trial, of the mistakes I made regarding the Confrontational [sic] Clause, I would have made some serious decisions.[195]

Counsel, however, also stated that he did not want the girls dragged through a trial, and he anticipated that "avoiding of the children somehow would lead to a just outcome for Mr. Thibodeaux."[196]    Based on his knowledge of and involvement in the related juvenile proceedings, counsel indicated that "I didn't want them involved in the court proceeding."[197]    While recalling his Confrontation Clause failings, counsel later recognized, "I failed to call the witnesses that clearly should have been called: his mother-in-law, his wife, his older child."[198]

---

[193]    ECF No. 6-1, at 11-12, 32.
[194]    ECF No. 6-1 at 21, 27-28, and 32-33.
[195]    St. R. Vol. 3 of 3, Hearing Tr., at 21, 10/22/15.
[196]    *Id*. at 22.
[197]    *Id*. at 23.
[198]    *Id*. at 27.

As mentioned before, the state trial court concluded that, based on counsel's comments and the record, Thibodeaux's trial counsel performed deficiently for purposes of *Strickland*. The state trial court (and Louisiana Supreme Court) focused its ruling on Thibodeaux's failure to show prejudice. To properly understand and address *Strickland* prejudice, *Crawford* and related state law and rulings must briefly be discussed.

The Sixth Amendment's Confrontation Clause guarantees an accused in a criminal prosecution the right to confront the witnesses against him. The similar clause of the Louisiana Constitution also guarantees an accused the right to confront and cross-examine the witnesses against him.[199] As an exception to this, Louisiana allows the use at trial of the videotaped statement of a protected person,[200] including a juvenile victim, under the circumstances listed in LA. REV. STAT. ANN. § 15:455(A).[201] This Louisiana statute is consistent with the factors addressed in *Crawford* and its progeny regarding out-of-court testimonial statements.[202]

---

[199] LA. CONST. art. I, § 16; *see also State v. Robinson*, 817 So.2d 1131, 1135 (La. 2002).

[200] LA. REV. STAT. ANN. § 15:440.2(C)(1) (defining protected person).

[201] LA. REV. STAT. ANN. § 15:44.5(A) provides as follows:

The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:

(1) No attorney for either party was present when the statement was made;

(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;

(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;

(4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement;

(5) Every voice on the recording is identified;

(6) The person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) The protected person is available to testify.

[202] *See State v. Kennedy*, 957 So.2d 757, 777(La. 2007) (finding the statute complies with *Crawford*).

In *Crawford*, the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[203]   In its 2017 decision, the Louisiana Supreme Court commented that, regardless of Thibodeaux's failure to assert a free-standing *Crawford* claim, Thibodeaux "made no showing at the evidentiary hearing that the child victims were unavailable to testify at trial, see R.S. 15:440.5(A)(8), and he impermissibly sought to shift his post-conviction burden of proof to the state by asserting that the state failed to demonstrate these witnesses' availability vel non to testify.   See La.C.Cr.P. art. 930.2."   Both the state courts and Thibodeaux have conflated the concepts of violation of the substantive confrontation rights with prejudice under *Strickland*.   However, prejudice under *Strickland* is distinct from prejudice under the Confrontation Clause and *Crawford*.

The Fifth Circuit addressed this distinction in *Coleman v. Vannoy*, 963 F.3d 429 (5th Cir. 2020).   Similar to Thibodeaux's case, in *Coleman*, the petitioner on state post-conviction asserted an ineffective assistance of counsel claim based on his counsel's failure under the Confrontation Clause to object testimony from Detective David Rupf, who summarized the out-of-court, inculpatory statements of Coleman's co-defendant, Hillary Bonita.[204]   The state trial court denied relief, and as in Thibodeaux's case, the state appellate court vacated and remanded for a new trial. The Louisiana Supreme Court, also as in Thibodeaux's case, reversed and reinstated the trial court's denial, finding that, even if counsel's failure was deficient performance, Coleman had not established prejudice under *Strickland*.[205]

---

[203] *Crawford*, 541 U.S. at 53-54.
[204] *Coleman*, 963 F.3d at 432.
[205] *Id.*

On appeal from the denial of Coleman's federal habeas petition, the court "assume[d], without deciding, that a competent lawyer would have objected to Rupf's testimony about Hillary's out-of-court statements on the basis of confrontation."[206]   The court proceeded to the prejudice prong, reiterating that "[t]he pivotal question" under the AEDPA is "'whether the state court's application of' [*Strickland's*] prejudice prong 'was unreasonable.'"[207]   The court commented on the distinction between prejudice under *Strickland* and harm under the Confrontation Clause:

> Coleman points to cases that have found certain Confrontation Clause errors to be non-harmless because of a lack of evidence otherwise supporting the prosecution's case.  *See*, *e.g.*, *United States v. Kizzee*, 877 F.3d 650, 662-63 (5th Cir. 2017).   But the harmless-error doctrine differs in important ways from [ineffective assistance of counsel] prejudice.   In the former, it is the state's burden to prove harmlessness beyond a reasonable doubt; in the latter, it is the defendant's burden to prove a reasonable probability that the result would have been different.
> Moreover, unlike confrontation errors, [ineffective assistance of counsel] claims "by their nature require a showing of prejudice with respect to the trial as a whole."  *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).   Confrontation has no inherent trial-outcome prejudice component.   Instead, a court asks whether a confrontation error was innocuous only after finding an error.   *See Van Arsdall*, 475 U.S. at 681-82; *United States v. Jones*, 930 F.3d 366, 379 (5th Cir. 2019).[208]

Considering this guidance, this court is required to focus on *Strickland* factors, not *Crawford,* in determining the reasonableness of the state courts' finding of no prejudice.   In addition, contrary to Thibodeaux's suggestion, there is no separate "fair trial" component under the *Strickland* prejudice factor.   The Supreme Court has declined the opportunity to decide

---

[206] *Id*. at 433 & n.1 (citing *Skinner v. Quarterman*, 576 F.3d 214, 217 (5th Cir. 2009) ("If the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance."), and *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012) (assuming without deciding that performance prong was met and affirming based on lack of prejudice)).
[207] *Id*. at 433 (citing *Richter*, 562 U.S. at 101).
[208] *Id*. at 434 (footnotes and citations omitted).

whether one does in fact exist separate from the outcome component.[209]   Nevertheless, the Supreme Court has made clear that *Strickland*'s prejudice prong is rooted in trial fairness.[210]

Thibodeaux has not shown that, had his counsel objected and/or called the child victims (or the others) as witnesses, the outcome of the proceeding would have been different for purposes of proving prejudice under *Strickland*.  "The petitioner must 'affirmatively prove,' and not just allege, prejudice."[211]   For the outcome to have been different, Thibodeaux would have to show that the trial court's verdict would have been different, *i.e.* not guilty.   In reality, had his counsel objected to the videotapes, the State would have called Thibodeaux's daughters to testify.   His daughters, their foster caretaker, his ex-wife S.T., S.T.'s mother, and the Thibodeaux's third daughter S.T., were under the State's subpoenas to appear at Thibodeaux's trial.[212]   Thibodeaux (nor his state post-conviction counsel) have presented proof that, had they testified, their testimony would have been different from that on the videotapes.   Without such showing, Thibodeaux only speculates that the verdict would have been different.   He cannot establish that, but for his

---

[209] *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) ("Petitioner therefore argues that under a proper interpretation of *Strickland*, even if there is no showing of a reasonable probability of a different outcome, relief still must be granted if the convicted person shows that attorney errors rendered the trial fundamentally unfair.  For the analytical purposes of this case, the Court will assume that petitioner's interpretation of *Strickland* is the correct one.   In light of the Court's ultimate holding, however, the Court need not decide that question here.")

[210] *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("Under our decisions, a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of *a fair trial*, a trial whose result is reliable.'" (emphasis added) (quoting *Strickland*, 466 U.S. at 687; citing *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the *trial was rendered unfair* and the verdict rendered suspect.") (emphasis added)).

[211] *Day*, 566 F.3d at 536 (quoting *Strickland*, 466 U.S. at 695).

[212] St. R. Vol. 1 of 3, Subpoena Service Return for Keecia Albert (caretaker), 5/26/11; *id*., Subpoena Service Return for C.T., 5/26/11; *id*., Subpoena Service Return for A.T., 5/26/11; *id*., Subpoena Service Return for S.T. (youngest child), 5/27/11, *id*., Subpoena Service Return for S.T., 5/25/11, Subpoena Service Return for Mary Solet (mother-in-law), 6/7/11.

counsel's deficient performance, the outcome would have been different.    This is the critical consideration under *Strickland's* "but for" prejudice test; this standard requires a "substantial," not just "conceivable," likelihood of a different result.[213]    Thibodeaux has not made this showing.

Thibodeaux also has not established that his counsel prejudiced the fairness of his proceeding when he did not compel the State to make the children and others available to testify, in violation of *Crawford*.    As Thibodeaux concedes, Louisiana law allowed use of the videotapes at trial under LA. REV. STAT. ANN. § 15:440.5(A)(8), which also required the "availability" of the witness.    The state law further instructs that the use of the videotape "shall not preclude," but does not specifically require, the prosecution from calling the witness to testify.[214]    According to the trial record, the considerations to use the videotapes under § 15:440.5 were present.[215]    The record also reflects that Thibodeaux's daughters and their foster caretaker (as well as his ex-wife S.T., her mother, and the third daughter S.T.) were under the State's subpoenas to appear at Thibodeaux's trial but were not called.[216]

Thibodeaux argues that the subpoenas were not enough to make them available and protect his rights under *Crawford*.    However, my exhaustive research has located no United States Supreme Court precedent that specifically requires a state prosecutor to call a witness or victim to the stand and then tender the witness for cross-examination in order to comply with the

---

[213] *Harrington*, 562 U.S. at 112.
[214] LA. REV. STAT. ANN. § 15:440.5(B).
[215] *See*, *e.g.*, St. R. Vol. 1 of 3, at 128, 135, 138, 141, 182, 184, 174 (Trial Tr., at 22 (viewing), 29 (no attorneys), 32, 35, 76, & 78 (accuracy), 68 (interviewer testified)); St. R. Vol. 2 of 3, Sentencing Tr., at 17-18, (9/12/11) (discussing lack of objections to the videotape during motion for new trial hearing).
[216] St. R. Vol. 1 of 3, Subpoena Service Return for Keecia Albert (caretaker), 5/26/11; *id.*, Subpoena Service Return for C.T., 5/26/11; *id.*, Subpoena Service Return for A.T., 5/26/11; *id.*, Subpoena Service Return for S.T. (youngest child), 5/27/11, *id.*, Subpoena Service Return for S.T., 5/25/11, Subpoena Service Return for Mary Solet (mother-in-law), 6/7/11.

confrontation requirements set out in *Crawford*.   Instead, *Crawford* and its progeny focus on "unavailable" witnesses, or more accurately, witnesses who *are not* unavailable.   To that end, the Supreme Court has explained that "'a witness is *not 'unavailable'*" (*i.e.*, *is* available) for purposes of the Confrontation Clause "'unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial'" and was legitimately unable to secure the witness's presence.[217]   One example of a "good-faith effort" mentioned by the Supreme Court was the issuance of trial subpoenas to the witness.[218]   The prosecutor in Thibodeaux's case did serve subpoenas on the victims (and their sister, caretaker, mother, and grandmother).   Years before *Crawford*, Justice Blackmun noted in a dissent that, under the Confrontation Clause, a witness's "presence in the courtroom made him as available to petitioner as to the prosecution."[219]   He wrote further that "there was no significant denial of petitioner's right to confrontation because petitioner herself could have called [the witness] and questioned him, if necessary, as an adverse witness.   The Confrontation Clause does not require that cross-examination actually occur; it requires only that a defendant be given the opportunity for cross-examination or its functional equivalent."[220]   While this commentary by Justice Blackmun is not binding precedent, it is compelling.

Considering all of the foregoing, Thibodeaux has not established that his counsel's failure to object to the videotape without the prosecutor first calling the witnesses to the stand rendered his trial unfair or created prejudice under *Strickland*.   The state courts failure to find prejudice in

---

[217] *Hardy v. Cross*, 565 U.S. 65, 69 (2011) (emphasis added) (quoting *Barber v. Page*, 390 U.S. 719, 724-25 (1968)).

[218] *Hardy*, 565 U.S. at 70 (citing *Ohio v. Roberts*, 448 U.S. 56, 75 (1980)).

[219] *Lee v. Illinois*, 476 U.S. 530, 549 n.3 (1986) (Blackmun, J., dissenting)

[220] *Id*.

this regard was neither contrary to or an unreasonable application of *Strickland* or any other clearly established Supreme Court law.

Finally, to the extent Thibodeaux claims that he was denied effective assistance of counsel through the "cumulative errors" of his trial counsel, his claim also fails.[221]   Due process standards require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."[222]   Due process allows the court to grant habeas relief only when the cumulative errors of the state court make the underlying proceeding fundamentally unfair.[223]

The Supreme Court has recognized that the cumulative effect of established errors, though not individually worthy, could be collectively significant under the due process standard.[224]   Cumulative error "provides relief only when the constitutional errors committed in the state trial court so fatally infected the trial that they violated the trial's fundamental fairness."[225]   To provide relief on federal habeas review, cumulative errors must have "more likely than not caused a suspect verdict."[226]   Thus, a claim of cumulative error is applicable in rare instances in which "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state

---

[221]  ECF 6-1, at 37.
[222]  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).
[223]  *Neyland v. Blackburn*, 785 F.2d 1283, 1292 (5th Cir. 1986).
[224]  *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).
[225]  *Carty v. Quarterman*, 345 F. App'x 897, 909 (5th Cir. 2009) (internal quotations omitted) (quoting *Spence v. Johnson*, 80 F.3d 989, 1000 (5th Cir. 1996)).
[226]  *Carty*, 345 F. App'x at 909 (citation omitted).

law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"[227]

For the reasons discussed above, Thibodeaux has identified *no* constitutional error by the state courts in his state criminal proceedings or the state court rulings on the effective assistance of his counsel. [228]   While his counsel was deficient in performance,  Thibodeaux has not shown that his counsel's errors created a prejudicial effect on the verdict.[229]   When individual contentions of ineffective assistance are meritless, that result cannot be changed simply by asserting the same claims collectively.   "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."[230]   Without an established constitutional error, there can be no deleterious cumulative effect for this court to consider.[231]

In summary, I cannot find that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*.   Thibodeaux failed to establish prejudice by showing that but for his counsel's errors, the result of the trial, *i.e.* the verdict, would have been different. Thibodeaux is not entitled to relief on any aspect of his ineffective assistance of counsel claim.

---

[227] *Derden v. McNeel*, 938 F.2d 605, 610 (5th Cir. 1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996).

[228] *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) ("[W]here individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'")

[229] *Id.* at 301 (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454, 1461 (5th Cir. 1992)).

[230] *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

[231] *Turner*, 481 F.3d at 301 ("where individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"); *Martinez-Perez v. Dretke*, 172 F. App'x 76, 83 (5th Cir. 2006) ("Obviously, if there was *no* error . . . there was *no* cumulative error." (emphasis in original)); *see also United States v. Fields*, 761 F.3d 443, 483 (5th Cir. 2014) (where no error by lower court was established, there was no cumulative error).

### 3. Claim Two: Sentencing Error

Thibodeaux claims that the state trial court erred in sentencing him on count two, aggravated incest, under LA. REV. STAT. ANN. § 14.78.1(D)(2). Thibodeaux has not explained this claim in his federal petition or supporting memoranda. In the state courts, the same claim was asserted by his appointed counsel on direct appeal. There counsel argued that the state trial court could not rely on that sentencing provision because the indictment did not include a statement that the minor victim was under 13 years old. The Louisiana First Circuit found that under requisite state law, the indictment placed Thibodeaux on notice of the charges against him and the birthdate of the victim, and therefore, he was on notice of the related sentencing exposure. The Louisiana Supreme Court denied Thibodeaux's related writ application making the appellate court's ruling the last reasoned opinion on the issue.[232]

Adopting his arguments in the state courts, Thibodeaux asserts that the prosecutor and state courts failed to follow state-court statutory rules and jurisprudence in determining his sentence. Errors made under state law will not warrant federal habeas review[233] because a federal habeas court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."[234] Therefore, even if the state trial court failed to comply with state law regarding Thibodeaux's sentencing, such errors are not correctable in a federal habeas corpus proceeding.[235] Thibodeaux is not entitled to federal habeas relief on this claim.

---

[232] *See Wilson*, 138 S. Ct. at 1192.

[233] *Swarthout*, 562 U.S. at 219; *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).

[234] *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).

[235] *See, e.g., Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987) ("a

## **RECOMMENDATION**

For the foregoing reasons, although I agree with Judge Wilkinson's prior finding that petitioner states a colorable confrontation clause claim based on his admittedly inept counsel's handling of the videotaped evidence of the child victims, the governing standard mandated by the AEDPA compels me to recognize the Louisiana Supreme Court's independent and adequate state basis for its refusal to review of that claim in its 2020 decision. Accordingly, it is **RECOMMENDED** that Thibodeaux's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[236]

New Orleans, Louisiana, this _____13th_____ day of May, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus."); *Smith v. Cain*, 253 F.3d 700, 2001 WL 498441, at *1 (5th Cir. Apr. 9, 2001) (unpub.).
[236]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).